```
          UNITED STATES DISTRICT COURT
             DISTRICT OF MINNESOTA
            CIVIL NO. 22-52 (DSD/DLM)
```

Shawn Pierce and
Stephanie Pierce,

        Plaintiff,

v.   **ORDER**

American Family Mutual
Insurance Company, S.I.,

        Defendant.

This matter is before the court upon the parties' cross motions for summary judgment and plaintiffs' motion to amend. Based on a review of the file, records, and proceedings herein, the court grants defendant American Family Insurance Company, S.I.'s motion and denies the motions of plaintiffs Shawn and Stephanie Pierce.

## BACKGROUND[1]

This insurance coverage dispute arises from a fire that damaged the home and personal belongings of plaintiff Shawn and Stephanie Pierce.

---

[1] The court has carefully reviewed the lengthy record and will only discuss in detail the issues material to the instant motion.

In October 2019, the Pierces insured their home through American Family. The insurance policy effectively provided coverage for fire damage between October 1, 2019, to October 1, 2020 (Policy). Remick Decl. Ex. 1. On July 17, 2020, a fire severely damaged the Pierces' home and personal property. The Policy covers both the damage to the home (Coverage A) and the loss of personal property (Coverage B). American Family acknowledged coverage, and the parties proceeded to determine the amount of loss caused by the fire. Disagreement ensued.

On September 23, 2020, American Family paid $329,605.25 in Actual Cash Value (ACV) for the dwelling under Coverage A. Anderson Decl. Ex. 1. American Family then made additional payments under Coverage A, increasing the total payment to $360,789.91. Id. The last pre-litigation payment was made on July 27, 2021, just over one year after the loss. Id. As for personal belongings under Coverage B, American Family made numerous payments totaling $176,167.45. The last pre-litigation payment was remitted on August 8, 2021. The Pierces disagreed with the amount and category of coverage.

On April 16, 2021, American Family demanded an appraisal to resolve the dispute under the appraisal provision of the Policy. Remick Aff. Ex. 1, at 11. The Pierces named an appraiser, as was their right, but thereafter delayed the appraisal process. In May

2

2021, American Family learned that the Pierces had sold the house in January 2021.[2] American Family then sent a letter to the Pierces notifying them that they had a duty to notify American Family before selling the home to preserve the personal items that would need to be appraised. In response, the Pierces confirmed that the house had been sold and demanded that American Family settle the claim by paying the Policy limit for all coverages. The Pierces also refused to move forward with the appraisal process. According to the Pierces, their measurement of loss exceeded the Policy limits, which rendered the dwelling a "total loss" and negated the appraisal as a means of resolving the dispute. American Family rejected the Pierces' "total loss" theory and refused to make any additional payments until the appraisal process had been completed.

In January 2022, the Pierces commenced this action against American Family. In January 2023, the Pierces filed an amended complaint alleging that American Family breached the Policy by failing to adequately pay them for their losses. ECF No. 37.

On August 10, 2023, the court ordered the parties to resolve their disputes as to Coverage A (real property) and Coverage B (personal property) through appraisal, as provided by Minn. Stat.

---

[2] The Pierces signed a contract to build a new home in a different location in November 2020. Remick Decl. Ex. 4.

§ 65A.01, subdiv. 3, and the Policy's appraisal provision. The court stayed proceedings pending the appraisal process. ECF No. 61, at 7-8.

The appraisal process concluded in early February 2025, resulting in the following award:

Replacement cost value (RCV)[3] for dwelling: $568,233.80

Actual cash value (ACV) for dwelling: $360,769.56

RCV for non-consumables: $438,368.52

ACV for non-consumables: $344,799.68

RCV for consumables: $39,851,05

ACV for consumables: $39,851.05

Remick Decl. Ex. 1, at 34; Remick Aff. Ex. A.

On February 7, 2025, the Pierces demanded (1) the RCA of the dwelling up to the Policy limit (an additional $189,210.10) plus $86,103.56 in pre-award interest; (2) the RCA of their belongings up to the Policy limit (an additional $236,332.55) plus $107,547.50 in pre-award interest; and (3) $27,500 for debris removal plus $12,514.38 in pre-award interest. Remick Aff. Ex. C.

---

[3] "ACV is a term that represents what property is worth in money after deducting depreciation.... In contrast, replacement cost value (RCV) reflects what property is worth in money without deducting depreciation." Clover Leaf Farm Condo. v. Country Mut. Ins. Co., No. 18cv2838, 2019 WL 1025251, at *1 n.1 (D. Minn. Mar. 4, 2019).

4

American Family agreed to pay the Policy limit under Coverage B (an additional $244,483.26) and pre-award interest for 805 days ($53,999.40), less the Policy deductible of $1,500.  Remick Aff. Ex. B.  It refused, however, to make any additional payments under Coverage A.  Id.

Both parties now both move for summary judgment and the Pierces move to amend the complaint to add a claim for bad faith.

**DISCUSSION**

**I.   Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth

5

specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S.C § at 324. A party asserting that a genuine dispute exists – or cannot exist – about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. RCV**

The parties remain in dispute as to whether the Pierces can collect the RCV under Coverage A ($550,000 per the Policy limit). The court finds that they are not entitled to do so.

The relevant Policy provision provides as follows:

> If you have received an actual cash value settlement for damaged or stolen property covered by replacement coverage and you have not reached your limit, you may make a further claim under this condition for any additional payment on a replacement cost basis provided:
>
> (1) you notify us within 180 days after the loss of your decision to repair or replace the damaged or stolen property; and
>
> (2) repair or replacement is completed within one year of the date of loss.

Remick Decl. Ex. 1, at 12. There is no genuine dispute that the

6

Pierces did not comply with this provision.[4]  They did not notify American Family of the decision to replace their home until May 2021, when American Family discovered that fact on its own, ten months after the loss.  Nor did they complete the replacement home until over year after the loss.

The court is unpersuaded by the Pierces' argument that the Policy deadline should be equitably tolled because American Family caused their inability to timely comply.  They are correct that "[a]n insurer can be estopped from asserting a time limitation contained in an insurance policy when the facts show that it would be unjust, inequitable, or unconscionable to do so."  New Oil Christian Ctr. v. Guideone Mut. Ins. Co., No. 22cv2136, 2025 WL 642914, at *5 (D. Minn. Feb. 27, 2025).  Tolling is typically appropriate where the insurer is responsible for delaying the claims process.  See id.; Axis Surplus Ins. Co. v. Condor Corp., No. 20cv789, 2023 WL 1767269, at *2 (D. Minn. Feb. 3, 2023) (finding RCV claim timely because the "delay was due to [insurer's] persistent denial of coverage ... rather than

---

[4]  As an aside, they make an argument that the RCV provision did not apply until American Family made all ACV payments due under the Policy.  But the Policy is to the contrary, as it plainly states that the RCV provision applies when the insured has received "an actual cash value settlement."  Remick Decl. Ex. 1, at 12 (emphasis added).  It does not require that all such payments must be made before turning to the RCV provision.

[insured's] lack of action"). Here, though, the Pierces, rather than American Family, caused the delay.

American Family paid the Pierces $356,894.56 in ACV for the dwelling approximately two months after the fire. When the Pierces rejected that amount, American Family requested an appraisal in April 2021. In the meantime, American Family continued to adjust the claim and make additional payments to the Pierces.[5] Rather than submit to an appraisal, the Pierces filed this suit in January 2022. They only participated in the appraisal process when the court ordered them to do so in August 2023, well over two years after American Family requested an appraisal. Under these facts, the court cannot conclude that equitable tolling is appropriate here.

The Pierces also argue that Minn. Stat. § 65A.01 prohibits American Family from imposing a one-year limitation on the completion of repair or replacement. Section 65A.01 states that "[n]o suit or action ... for the recovery of any claim shall be sustainable in any court of law or equity ... unless commenced within two years after inception of the loss." According to the Pierces, the Policy's one-year deadline unlawfully contradicts

---

[5] American Family ended up paying more than the later-issued appraisal award ($360,789.92 versus $356,894.56).

this provision. The court disagrees. The statute sets a limitations period for commencing an insurance coverage suit. It does not dictate the specific terms of insurance polices themselves.

### III. Pre-award interest

American Family has paid the Pierces $53,999.40 in pre-award interest under Coverage B. The Pierces now seek an additional $56,749.68 in interest covering the 864-day period in which the appraisal was delayed due to their refusal to participate. As stated above the appraisal delay falls squarely on the Pierces. Their argument that the coverage question had to be resolved before an appraisal could occur is at odds with the order compelling appraisal and case law. See also Axis Surplus Ins. Co. v. Condor Co., 19 F.4th 1062, 1064 (8th Cir. 2021) (affirming the district court's determination that an appraisal should proceed regardless of the underlying coverage dispute). The court finds, therefore, that it would be inequitable to award them pre-award interest during that extended period.

### IV. Debris Removal Interest

The Pierces seek $9,329.28 in debris removal interest. The parties agree that the right to such interest applies "specifically" to appraisal awards. ECF No. 114, at 19 (citing

9

Minn Stat. § 549.09(b) and <u>Poehler v. Cincinnati Ins. Co.</u>, 899 N.W.2d 135, 143 (Minn. 2017). Because the appraisal panel did not award a debris removal amount, pre-award interest is not applicable.

**V.   Deductible Setoff**

The Pierces argue that they should not have to pay the $1,500 deductible under the Policy with respect to Coverage B. The Policy provides that American Family will pay "only that part of a covered loss <u>over</u> any deductible which applies." Remick Decl. Ex. 1, at 12 (emphasis added). A plain reading of this provision leads to the conclusion that the Pierces were obligated to pay the deductible. They are not entitled to receive that money back from American Family.

**VI.  Motion to Amend**

The Pierces move to amend the complaint to include a claim for punitive damages under Minn. Stat. § 604.18, because American Family denied them benefits absent a reasonable basis. Given the court's determination above, a claim based in bad faith is not supported by the record. The motion is denied.

**VII. Motion to Strike/File Sur-reply**

The Pierces move to strike certain aspects of American Family's reply to its motion for summary judgment as outside the

10

arguments raised by the Pierces in opposition to that motion. In the alternative, the Pierces requested leave to file a sur-reply. The motion is denied as moot.

## CONCLUSION

Accordingly, based on above, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for summary judgment and to amend [ECF No. 104] is denied;

2. Defendant's motion for summary judgment [ECF No. 107] is granted; and

3. The motion to strike pleading [ECF No. 122] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:   December 11, 2025         /s David S. Doty
                                   David S. Doty, Judge
                                   United Stated District Court